UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| JEFFREY L. HOLLOMON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:13CV00028 JAR |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Jeffrey L. Hollomon's ("Hollomon") application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 404-433.

**I.  Background**

On December 7, 2007,[1] Hollomon filed an application for supplemental security income benefits. (Tr. 200-207) The Social Security Administration ("SSA") denied his application on March 20, 2008. (Tr. 112) Hollomon filed a timely request for a hearing before an administrative law judge ("ALJ") on May 19, 2008. (Tr. 116) Following a hearing on January 13, 2010 (Tr. 28-40), the ALJ issued a written decision on March 12, 2010, upholding the denial of benefits. (Tr. 88) Hollomon requested review of the ALJ's decision by the Appeals Council and on March 4, 2011, the Appeals Council remanded the case for further evaluation. (Tr. 105-107)

---

[1] The ALJ references December 7, 2007 as the application date; however Hollomon's application is actually dated December 12, 2007.

Hollomon appeared and testified at a second hearing held on January 11, 2012. (Tr. 41-83) Following the hearing, the ALJ issued a written decision on January 26, 2012, finding Hollomon was not disabled. (Tr. 7) Hollomon again requested review of the ALJ's decision by the Appeals Council, which request was denied on January 15, 2013. (Tr. 1) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Hollomon filed this appeal on March 14, 2013. (Doc. No. 1) The Commissioner filed an Answer. (Doc. No. 9) Hollomon filed a brief in support of his complaint (Doc. No. 23) and the Commissioner filed a brief in support of the answer. (Doc. No. 28) Hollomon did not file a reply.

## II. Decision of the ALJ

The ALJ determined that Hollomon had not engaged in substantial gainful activity since December 7, 2007, the application date. (Tr. 12) The ALJ found Hollomon had the severe impairments of degenerative disk disease and bipolar disorder, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12-14)

After considering the entire record, the ALJ determined Hollomon has the residual functional capacity ("RFC") to perform less than the full range of light work. (Tr. 14) Specifically, Hollomon is able to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for up to six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and climb ramps and stairs occasionally, but no ladders ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He should avoid hazards such as dangerous machinery or unprotected heights. He is able to understand, remember and carry out non-detailed two-to-three step instructions, and perform repetitive tasks in a routine work setting,

involving few changes, where interaction with co-workers is superficial, and where the work would be performed in a non-public work setting. (Tr. 14-15) The ALJ found Hollomon unable to perform any past relevant work (Tr. 20) but that there are jobs that exist in significant numbers in the national economy that he can perform, such as cleaner/housekeeper, small products assembler and hand packager/inspector. (Tr. 21) Thus, the ALJ concluded that a finding of "not disabled" was appropriate. (Id.)

Hollomon appeals, contending the ALJ failed to give proper weight to the treating source opinion. (Doc. No. 23 at 6) The Commissioner maintains that the ALJ properly addressed the medical opinion evidence. (Doc. No. 28 at 4)

### III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

#### A. Hearing Testimony

The ALJ held a hearing in this matter on January 11, 2012. (Tr. 41) Hollomon testified and was represented by counsel. In his opening statement, Hollomon's counsel represented that while Hollomon has some physical limitations, he cannot work at any level primarily due to his mental limitations. (Tr. 45) Vocational expert Gary Weimholt also testified at the hearing. (Tr. 75-82)

##### 1. Hollomon's testimony

At the time of the hearing, Hollomon was 51 years old. (Tr. 46) He is divorced and lives by himself. (Tr. 45, 54) He has a high school education. (Tr. 46) Hollomon last worked in 2004 in a warehouse loading and unloading meat. (Tr. 47) He quit because he was having trouble with his back. (Tr. 64) Since that time, and through 2011, Hollomon has done small jobs for friends, such as cleaning gutters, hanging Christmas lights, and general yard work. (Tr. 47-48) His

mother helps him with his expenses and takes care of his bills. (Tr. 53) Hollomon testified it had been more than six months since he applied for a job. (Tr. 54) He has not received unemployment benefits since filing for disability. (Tr. 55)

During the hearing, Hollomon was observed twitching in both his hands and his legs. (Tr. 55) It was his testimony that while he was nervous because of the hearing, the twitching was not the result of being out or around people; it happens at home when he is by himself. (Tr. 55-56) Hollomon takes eight different medications for stress, anxiety, bipolar disorder, his heart and stomach, and to help him sleep. (Tr. 58-59) He suffers no side effects from these medications. (Tr. 59) Hollomon testified that he did not sleep well since he had been diagnosed as bipolar. (Tr. 59) He usually goes to bed about 9:00 p.m. and wakes up in the middle of the night. When that happens, he lays there until morning. (Tr. 59)

With respect to his physical problems, it was Hollomon's testimony that he basically lives with a "small amount of pain" in his lower back and hips from a L4-L5 spinal fusion. (Tr. 60) In terms of activities, he testified that if he has a lot of pain, he limits his activity to twenty minutes at a time and then sits down and relaxes for twenty minutes. (Tr. 61) He stated that his back pain does not keep him from doing anything around his house. (Tr. 61-62) He can stand and walk for 30-45 minutes before having to sit down. (Tr. 62) Hollomon gets a small amount of relief from Ibuprofen. (Tr. 62) He also testified that an injury he sustained to his lower right leg in August 1977 still bothers him, but that he always been able to work with pain. (Tr. 63-64)

Hollomon testified his biggest issue seemed to be his mental problems. (Tr. 64) Although he has had problems with anxiety and stress since he was a child, Hollomon stated that now he has more nervousness, stress and anxiety. (Tr. 64-65) He doesn't leave his house unless he absolutely has to. (Tr. 65, 71) He has difficulty carrying on a conversation. (Id.) He also has

4

problems with his memory, possibly due to his medications. (Id.) He does not go out and visit his friends like he used to. (Tr. 66)

Hollomon takes care of all of his household chores. He has difficulty going into a store and being around people, but he does his own grocery shopping. (Tr. 70) He mows his own grass. (Tr. 67-68) On occasion his mother helps him with general cleaning because he lacks motivation. (Id.) Every two weeks he picks up his five year old son and cares for him. (Tr. 68) He has his own bank account, and spends time reading and watching movies. (Tr. 67)

It was Hollomon's testimony that three or four days a week he had no motivation to get dressed and his depression would be high. On those days he sits and stares off into space. (Tr. 72) He does not answer the phone. (Tr. 73) He lets the mail stack up because he is anxious about opening it. (Id.) When reading, Hollomon loses focus and has to reread sentences. (Id.) During the day, he lays down for a couple of hours at a time. (Tr. 74) When he leaves his house, Hollomon has trouble breathing, has concentration problems and feels stress. (Tr. 74) He has tried over twenty different medications for his bipolar condition. (Tr. 75) Hollomon has been treated for his bipolar disorder for the past 2 ½ years by Dr. Taranissi. (Tr. 75)

### 2. Testimony of vocational expert

With respect to Hollomon's vocational history, the vocational expert Gary Weimholt testified that Hollomon worked as a warehouse laborer, medium exertional level, unskilled. (Tr. 77-78) The ALJ then asked Weimholt to assume an individual 51 years old, with a high school education and the same work experience as Hollomon, who could lift and/or carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk for about six hours of an eight-hour workday, sit for at least six hours of an eight hour work day, occasionally climb ramps and stairs, but no ladders, ropes or scaffolds, could occasionally balance, stoop, kneel, crouch, crawl, and

needs to avoid dangerous machinery or unprotected heights. This hypothetical individual would be able to understand, remember, and carry out non-detailed, two to three-step instructions, perform repetitive tasks in a routine work setting involving few changes where interaction with coworkers would be superficial in nature, and the work would be performed in a non-public setting where the worker would not to have to be around the general public. (Tr. 78-79) Based on this hypothetical, Weimhold opined that such an individual could work as cleaner/housekeeper, DOT 323.687-014, light and unskilled, with approximately 6,500 such jobs in the state of Missouri and 325,000 nationally. (Tr. 79) Such an individual could also work as a small product assembler, DOT 739.687-030, also light and unskilled, with 5,000 such jobs in the state of Missouri and 250,000 nationally. (Id.) Finally, such an individual could work as an inspector and hand packager, DOT 559.687-074, light and unskilled, with approximately 5,000 jobs in the state of Missouri and 250,000 nationally. (Id.)

The second hypothetical asked Weimholt to assume the limitations of the first hypothetical with the additional factors that the individual would be absent from work an average of once a month. Weimholt testified that once a month is within the allowable leave time; however, if the absences exceed twice a month, which he characterizes as chronic, then the individual would require some accommodation or be subject to dismissal. (Tr. 80) On further questioning, Weimhold testified that if an individual is considered unreliable in terms of the competencies of good work habits, punctuality, and time management, then there would be no jobs. (Tr. 81-82)

### B.    Medical Records

The ALJ summarized Hollomon's medical records at Tr. 16-18. Relevant medical records are discussed as part of the analysis.

**IV. Standards**

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v.

Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability,

however, remains with the claimant." Meyerpeter v. Astrue, 902 F.Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir.2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir.2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;
> (2) The education, background, work history, and age of the claimant;
> (3) The medical evidence given by the claimant's treating physicians;
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
> (5) The corroboration by third parties of the claimant's physical impairment;
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
> (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

V. **Discussion**

In his appeal of the Commissioner's decision, Hollomon argues the ALJ formed his own opinion of the medical evidence instead of relying on the opinion of his treating psychiatrist,

Ahmed Taranissi, M.D., and as a result provided no medical basis for his RFC finding. (Doc. No. 23 at 9-11)

**RFC finding**

A claimant's RFC is defined as the most an individual can do despite the combined effects of all of his or her credible limitations. Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ must determine a claimant's RFC based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. See Voegtlin v. Colvin, 2014 WL 651378, at *4 (E.D. Mo. Feb. 19, 2014) (citing McCoy v. Astrue, 648 F.3d 605 (8th Cir.2011)). An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529; SSR 96–7p. It is the claimant's burden, not the Commissioner's, to prove the claimant's RFC. See Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir.2004); McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir.2000).

Hollomon relies on two mental RFC assessments conducted by Dr. Taranissi over the course of his treatment. (Id. at 9) The first, in December 2009, assessed Hollomon's ability to do work-related mental activities. (Tr. 591-592) Dr. Taranissi opined that Hollomon's ability to make occupational adjustments such as following work rules, interacting with supervisors and the public, and functioning independently was fair; his ability to deal with work stresses was "poor to none." (Tr. 591) Hollomon's ability to understand, remember and carry out simple, detailed, or complex job instructions was fair. (Tr. 592) His ability to maintain his appearance, behave in an emotionally stable manner and relate predictably in social situations was also fair.

(Id.) Hollomon's ability to demonstrate reliability was, in Dr. Taranissi's opinion, "poor or none." (Id.)

In December 2011, Dr. Taranissi conducted a mental RFC assessment of Hollomon. (Tr. 656-658) Dr. Taranissi opined that Hollomon's ability to understand and remember instructions, both simple and detailed, was markedly limited. (Tr. 656) His ability to perform activities within a schedule, maintain regular attendance, be punctual, sustain an ordinary routine without special supervision, and work in coordination with or proximity to others without being distracted by them was also markedly limited. (Id.) Similarly, his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers, maintain socially appropriate behavior, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, and set realistic goals or make plans independently of others was markedly limited. (Tr. 657)

Generally, a treating physician's opinion is given more weight than other sources in a disability proceeding. Cross v. Colvin, 2014 WL 320161, at *9 (E.D.Mo. Jan. 29, 2014) (citing Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir.2012)). See also 20 C.F.R. § 404.1527(c)(2). Indeed, when the treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight. Cross, 2014 WL 320161 at *9. "However, [a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. (quoting Wildman v. Astrue, 596

F.3d 959, 964 (8th Cir.2010) (alteration in original) (internal quotation omitted). See also Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005); Travis v.Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007). Ultimately, the ALJ must "give good reasons" to explain the weight given the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2). Once the ALJ has decided how much weight to give a medical opinion, the Court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence. See Brown v. Astrue, 611 F.3d 941, 951 (8th Cir.2010).

Here, the ALJ provided several reasons for not giving controlling weight to Dr. Taranissi's opinions. First, Dr. Taranissi indicated that Hollomon had a number of "moderate" and "marked" limitations, but the checklist form he used did not define those terms. (Tr. 17) An ALJ may properly discount a treating physician's opinion if it is in the checklist format with "little to no elaboration." Harris v. Astrue, 2011 WL 940515, at *3 (E.D. Mo. Mar. 16, 2011) (citing Wildman, 596 F.3d at 964; Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001)). See also, Tyner v. Astrue, 2009 WL 2182374, at *6 (E.D.Mo. July 22, 2009) ("A treating physician's checkmarks on a form, however, are conclusory opinions which can be discounted if contradicted by other objective medical evidence.").

Second, Dr. Taranissi's opinion was not supported by his own treatment notes, wherein he frequently noted that Hollomon was "doing better" and appeared "stable." (Tr. 17) Dr. Taranissi reported that while Hollomon's mood was anxious, he was cooperative and oriented; his eye contact, memory, insight, and judgment were good; his affect was appropriate; his speech was normal; his flow of thought was logical; and he had no hallucinations, delusions, or suicidal thoughts. (Tr. 472, 474-78, 594, 598, 601-02, 605-06, 612-13, 617, 652) The ALJ noted that Dr. Taranissi estimated Hollomon's global assessment of functioning (GAF) score between 50 to 65,

indicating mild to moderate symptoms. (Tr. 16, 475-477, 595, 599, 603, 605) In addition, medication helped Hollomon stabilize his mood and control his depression without side effects. (Tr. 611-12, 615, 617, 621, 652-53) If an impairment can be controlled by treatment, it cannot be considered disabling. See Gibson v. Astrue, 2010 WL 3782011, at *9 (E.D.Mo. Sept. 21, 2010) (and cases cited therein).

Dr. Taranissi's notes show Hollomon was cleared to do activities and was looking for a job. He was mowing the lawn, doing other household chores, caring for his young son every two weeks, and doing small jobs for friends. (Tr. 593, 597, 611, 615, 619, 652) These activities provide further support for the ALJ's decision, and conflict with Dr. Taranissi's opined limitations. "A treating physician's opinion is not afforded controlling weight when the opinion is internally inconsistent, or when it is inconsistent with, or unsupported by, the physician's own treatment notes." Miller v. Colvin, 2014 WL 2159004, at *3 (W.D.Mo. May 23, 2014) (citing Myers v. Colvin, 721 F.3d 521, 525 (8th Cir. 2013); Davidson v. Astrue, 578 F.3d 838, 843 (8th Cir.2009).

Third, Dr. Taranissi appeared to rely on Hollomon's self-reported symptoms, yet, as pointed out by the ALJ and discussed below, there were good reasons for questioning the credibility of Hollomon's subjective complaints. (Tr. 17, 18-20) An ALJ may give less weight to a doctor's opinion that is based on a plaintiff's self-reported complaints, particularly when the plaintiff is not entirely credible. See Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir.2007).

Finally, the ALJ found Dr. Taranissi's opinion was not consistent with the opinion of the State Agency psychologist Stanley Hutson, Ph.D., who concluded that Hollomon was limited in his ability to interact with others and handle change/stress, but able to follow instructions and do routine tasks in a slow stress work setting. It was Dr. Hutson's opinion that Hollomon would be

13

best suited for work without close proximity to others. (Tr. 397) The ALJ found this opinion consistent with the psychiatric treatment notes and Hollomon's own admissions and actual daily activities and gave it significant weight. (Tr. 17)

As stated above, the ALJ was free to discount the opinion of Hollomon's treating physician as along as he sufficiently explained his reasons for doing so. Based on a review of the record as a whole, the Court finds there is substantial evidence to support the ALJ's decision not to give controlling weight to Dr. Taranissi's opinion and to give significant weight to Dr. Hutson's opinion.

**Credibility finding**

In evaluating a claimant's credibility, the ALJ is required to apply the factors from Polaski, 739 F.2d at 1322, which include the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. The claimant's relevant work history and the absence of objective medical evidence to support the complaints may also be considered, and the ALJ may discount subjective complaints if there are inconsistencies in the record as a whole. Choate v. Barnhart, 457 F.3d 865, 871 (8th Cir. 2006) (citing Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000)). The Court will uphold an ALJ's credibility findings, so long as they are adequately explained and supported. Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005).

Here, the ALJ found Hollomon's allegations that he is incapable of all work activity not credible for several reasons. (Tr. 20) First, he admitted at the hearing that he does not have any side effects from his medication. (Tr. 18) "The absence of side effects from medication is a proper factor for the ALJ to consider when determining whether a plaintiff's complaints of disabling pain are credible." Dyer v. Astrue, 2009 WL 350637, at *11 (E.D.Mo. Feb. 10, 2009)

(citing Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir.2003); Richmond v. Shalala, 23 F.3d 1441, 1444 (8th Cir.1994).

Second, the fact that Hollomon did not reveal his work activity on his work background form, in addition to his lack of initial candor regarding his work activity at the hearing, suggested to the ALJ that his testimony was not entirely credible. (Tr. 18) Moreover, Hollomon's daily activities and recent work activity, including yard work, gutter cleaning and the like, indicated he has been more active than he would lead one to believe. (Tr. 19) It is proper for the ALJ to consider daily activities in conjunction with other factors affecting the credibility of a plaintiff's complaints. See, e.g., Halverson v. Astrue, 600 F.3d 922, 932–33 (8th Cir.2010) (holding that the ALJ properly considered daily activities in conjunction with other inconsistencies in the record in assessing the credibility of Plaintiff's complaints); Wagner v. Astrue, 499 F.3d 842, 852–53 (8th Cir.2007) (finding a claimant's accounts of "extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends" supported the ALJ's conclusion that his complaints were not fully credible).

A claimant's ability to perform part-time work may also be considered as part of the credibility analysis. See Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir.2004) ("It was also not unreasonable for the ALJ to note that [the plaintiff's] daily activities, including part-time work ... were inconsistent with her claim of disabling pain."). See also 20 C.F.R. § 416.971 ("Work that a claimant "[has] done during any period in which [she] believe[s] [she is] disabled may show that [she is] able to work at the substantial gainful activity level."). Hollomon's ability to do odd jobs for other people for cash is certainly relevant to a consideration of his mental and physical abilities to perform work.

After considering the ALJ's findings regarding other objective medical evidence, Hollomon's daily activities, work history, and the effectiveness of his medication, the Court finds the ALJ conducted a proper credibility analysis, and discounted his subjective complaints because they were inconsistent with the evidence as a whole. As such, the Court will defer to the ALJ's credibility determination. Buckner v. Astrue, 646 F.3d 549, 558 (8th Cir.2011).

**VI.     Conclusion**

For the foregoing reasons, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate judgment will accompany this Order.

Dated this 29th day of September, 2014.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**